1  Robert S. Green (State Bar No. 136183)
   James Robert Noblin (State Bar No. 114442)
2  **GREEN & NOBLIN, P.C.**
   2200 Larkspur Landing Circle, Suite 101
3  Larkspur, CA  94939
   Telephone:  (415) 477-6700
4  Facsimile:  (415) 477-6710
   Email:  gnecf@classcounsel.com
5

6  *Attorneys for Plaintiff*

7  [Additional Counsel on Signature Page

8

9

10               **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA**

12

13  SABRINA ROYER, Derivatively on          Case No.:
    Behalf of STITCH FIX, INC.,
14                                          **VERIFIED STOCKHOLDER**
                     Plaintiff,             **DERIVATIVE COMPLAINT FOR**
15                                          **VIOLATIONS OF SECURITIES LAW**
    vs.                                     **AND BREACH OF FIDUCIARY DUTY**
16
    KATRINA LAKE, STEVEN
17  ANDERSON, J. WILLIAM GURLEY,
    MARKA HANSEN, KIRSTEN LYNCH,            **JURY TRIAL DEMANDED**
18  SHARON MCCOLAM, and MIKKEL
    SVANE,
19
                     Defendants.
20
21  -and-

22  STITCH FIX, INC.,

23                     Nominal Defendant.

24

25

26

27

28

00109407.000.docx

Plaintiff Sabrina Royer ("Plaintiff"), by and through her undersigned counsel, derivatively on behalf of Nominal Defendant Stitch Fix, Inc. ("Stitch Fix" or the "Company"), submits this Verified Shareholder Derivative Complaint (the "Complaint").  Plaintiff's allegations are based upon her personal knowledge as to herself and her own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Stitch Fix with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought in the right, and for the benefit, of Stitch Fix against certain of its officers and directors seeking to remedy Defendants' violations of state and federal law during that have occurred from June 8, 2018 through the present (the "Relevant Period") and have caused substantial harm to Stitch Fix.  Plaintiff seeks to remedy Defendants' violations of state and federal law during the relevant period that have caused and continue to cause substantial monetary losses to Stitch Fix and other damages, including damages to its reputation and goodwill.

## JURSIDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of sections 10(b) and 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

3.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

00109407.000.docx

4.      Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) Stitch Fix maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Stitch Fix, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

**Plaintiff**

5.      ***Plaintiff Sabrina Royer*** ("Plaintiff" or "Royer") is a current owner of Stitch Fix stock and has held the stock during the time of Defendants' continuous wrongful course of conduct alleged herein.  Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the Company.

**Nominal Defendant**

6.      Nominal Defendant Stitch Fix is a Delaware corporation with principal executive offices located at 1 Montgomery Street, Suite 1500, San Francisco, California.

**Director Defendants**

7.      ***Defendant Katrina Lake*** ("Lake") is the Company's Founder and has served as its Chief Executive Officer ("CEO") and a member of the Company's Board of Directors ("Board') since the Company's inception in 2011

8.      ***Defendant Steven Anderson*** ("Anderson") has served as a member of the Stitch Fix Board since 2011.  Anderson is a member of the Stitch Fix Compensation Committee.

9.      ***Defendant J. William Gurley*** ("Gurley") has served as a member of the Stitch Fix Board since August 2013.  Gurley is chair of the Company's Nominating and Corporate Governance Committee.

00109407.000.docx

10.    **Defendant Marka Hansen** ("Hansen") has served as a member of the Stitch Fix Board since February 2014.  Hansen is the chair of the Stitch Fix Compensation Committee and is a member of its Audit Committee.

11.    **Defendant Kirsten Lynch** ("Lynch") has served as a member of the Stitch Fix Board since March 2018.  Lynch is a member of the Stitch Fix Compensation Committee

12.    **Defendant Sharon McCollam** ("McCollam") has served as a member of the Stitch Fix Board since November 2016.  McCollam is the chair of the Stitch Fix Audit Committee and is a member of its Nominating and Corporate Governance Committee.

13.    **Defendant Mikkel Svane** ("Svane") has served as a member of the Stitch Fix Board since October 2018.  Svane is a member of the Stitch Fix Audit Committee.

14.    Defendants Lake, Anderson, Gurley, Hansen, Lynch, McCollam, and Svane are referred to herein as the "Director Defendants" or "Individual Defendants."

**Non-Party Officers**

15.    **Paul Yee** ("Yee") is, and was at all relevant times, the Chief Financial Officer ("CFO") of Stitch Fix.

16.    **Mike C. Smith** ("Smith") is, and was at all relevant times, the Chief Operating Officer ("COO") of Stitch Fix.

## STITCH FIX'S CORPORATE GOVERNANCE

17.    As members of Stitch's Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

18.    The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Stitch Fix, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company.

00109407.000.docx

## DUTIES OF THE DIRECTOR DEFENDANTS

19.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of Stitch Fix, the Director Defendants owed Stitch Fix and its investors the fiduciary obligations of trust, loyalty, and good faith.  The obligations required the Director Defendants to use their utmost abilities to control and manage Stitch Fix in an honest and lawful manner.  The Director Defendants were and are required to act in furtherance of the best interests of Stitch Fix and its investors.

20.     Each director of the Company owes to Stitch Fix and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

21.     To discharge their duties, the officers and directors of Stitch Fix were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company.  By virtue of such duties, the officers and directors of Stitch Fix were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

00109407.000.docx

accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     remain informed as to how Stitch Fix conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)     ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

22.     Each Director Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Stitch Fix, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

23.     The Director Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the business results and prospects of the Company.  As a result, Stitch Fix has expended, and will continue to expend, significant sums of money related to investigations and lawsuits.

00109407.000.docx

## DEFENDANTS FALSE AND MISLEADING STATEMENTS

24.     On June 7, 2018, Stitch Fix issued a press release and letter to shareholders announcing its 3rd quarter 2018 ("3Q18") financial results for the period ended April 28, 2018. The press release emphasized that Stitch Fix had experienced growth in active clients, to 2.7 million, an increase of 30% year over year:

**Stitch Fix Announces Third Quarter Fiscal 2018 Financial Results**

. . . Stitch Fix, Inc. (NASDAQ: SFIX), the leading online personal styling service, has released its financial results for its third quarter of fiscal year 2018 ended April 28, 2018 and posted a letter to its shareholders on its investor relations website.  Highlights include delivering:

> Active clients of 2.7 million, an increase of 30% year over year

> Net revenue of $316.7 million, an increase of 29% year over year

> Net income of $9.5 million and adjusted EBITDA of $12.4 million

> Diluted earnings per share of $0.09

"In addition to driving strong net revenue, net income, and adjusted EBITDA, we grew our active client count to 2.7 million, an increase of 30% year-over-year," said Stitch Fix founder and CEO Katrina Lake. "We continue to balance growth and profitability, demonstrated by our ability to consistently deliver top-line growth of over 20% even as we invest in category expansions, technology talent, and marketing. Our third quarter results demonstrate continued positive momentum= for Stitch Fix and the power of our unique ability to deliver personalized service at scale."

Today Stitch Fix also announced the upcoming launch of Stitch Fix Kids.

"Our new Stitch Fix Kids offering is a testament to the scalability of our platform," explained Lake. "We're excited for Stitch Fix to style everyone in the family and to create an effortless way for parents to shop for themselves and their children."

25.     The shareholder letter, which was posted on the Company's website and filed with the SEC, repeated the Company's claim that it had "[grown] active clients to 2.7 million as of April 28, 2018," from 2.5 million in 2Q18, and from 2.07 million in 3Q17, an increase of 614,000 and 29.6% year-over-year growth.

26.     As to "Advertising," the 3Q18 shareholder letter stated that the Company's "Q3'18 advertising spend," which it said then included "the costs associated with the production of advertising, television, radio and online advertising," had "increased relative to [its] Q3'17

-6-

1    expense [to] 8.7% of net revenue." It also stated that the Company "continue[s] to make

2    strategic and measured marketing investments designed to achieve near-term payback."

3        27.    The Company had a conference call with analysts and investors that afternoon

4    hosted by Lake, Yee and Smith during which they provided additional positive commentary

5    about the Company's 3Q18 financial results and its purportedly ongoing strong business metrics

6    and financial prospects.  Defendant Lake stated that the Company had grown its "active client

7    count to 2.7 million as of April 28, 2018, an increase of 614,000 and 30% year over year," and

8    that the "Q3 also marked the fifth consecutive quarter of over 20% year over year top-line

9    growth."  She further emphasized that the Company had "significant opportunities to acquire

10   new clients in [its] existing business," and that the "30% year-over-year growth [it had] seen in

11   active client count [was] the result of [efforts to serve new client groups], efficiently leveraging

12   [its] performance marketing capabilities and increasing [its] brand awareness."

13       28.    Commenting during the Q&A portion of the call on the impact that the new

14   Men's and Plus-sized client offerings was having on the growth of active clients, Lake

15   emphasized that for "Plus directionally," there were "75,000 . . . people that were waiting on the

16   wait list before [they] even launched the business," and though she stated Stitch Fix "[would

17   not] be providing the exact numbers, the number of people that [were] benefiting from that

18   service [was] significantly higher than that and certainly continue[d] to grow."  She also stated

19   that "from a category perspective, Men's [and] Plus size . . . are all great opportunities for us to

20   be able to have many, many paths for long-term growth."

21       29.    Asked which categories of active clients were providing the Company with the

22   confidence to provide the strong 4Q18 financial guidance, Yee stated that, "from a driver's

23   standpoint, we grew active clients by 30% year-over-year, and that's both for our Women's and

24   Men's categories," adding that the Company was "really pleased with efficiencies . . . seen with

25   [its] marketing spend to attract new clients as well as ability to reengage and engage clients with

26   the various tools . . . to really please [its] clients."

27

28

00109407.000.docx

30.     That same day, after the Company's reported its financial results, *CNBC* aired a segment and published an article repeating Lake's claims of continuing positive momentum in scaling the Company's business:

Stitch Fix soared after the company reported strong earnings and user growth on Thursday.

Here's how the company did compared to what Wall Street expected:

- Earnings: 9 cents vs. 3 cents forecast by Thomson Reuters

- Revenue: $316.7 million vs. $306 million forecast by Thomson Reuters

- Active clients: 2.7 million vs. 2.66 million forecast by StreetAccount

In the year-ago quarter, Stitch Fix reported a loss per share of 38 cents on $245.1 million in revenue.

\* \* \*

Founder and CEO Katrina Lake said the company has been able to post revenue growth without sacrificing investment in the business.

"Our third quarter results demonstrate continued positive momentum for Stitch Fix and the power of our unique ability to deliver personalized service at scale," Lake said in a statement.

31.     After the Company's positive statements in its 3Q18 report and conference call, the price of Stitch Fix common stock surged more than 29%, or $5.71 per share, to trade as high as $25.38 per share in intraday trading on June 8, 2018, on unusually high volume.

32.     On June 8, 2018, the Company filed its 3Q18 quarterly report on Form 10-Q with the SEC, which was signed and certified pursuant to the Sarbanes-Oxley Act of 2002 by Lake and Yee. The Management's Discussion and Analysis ("MD&A") section of the Form 10-Q contained the following discussion of the Company's active client growth, which the Form 10-Q emphasized was a "key indicator of growth and the overall health of [the Company's] business," stating in pertinent part as follows:

**Active Clients**

We believe that the number of active clients is a key indicator of our growth and the overall health of our business. We define an active client as a client who checked out a Fix in the preceding 12-month period, measured as of the last date of that period. A client checks out a Fix when she indicates what items she is keeping through our mobile application or on our website. We had

2,688,000 and 2,074,000 active clients as of April 28, 2018 and April 29, 2017, respectively, representing year-over-year growth of 29.6%.

33.     Detailing the "Factors Affecting [its] Performance," the MD&A section of Stitch Fix's 3Q18 Form 10-Q further emphasized the Company's ongoing active customer growth success and how its marketing spend was contributing to that growth, stating in pertinent part as follows:

**Client Acquisition and Engagement**

To grow our business, we must continue to acquire clients and successfully engage them.  We believe that implementing broad-based marketing strategies that increase our brand awareness has the potential to strengthen Stitch Fix as a national consumer brand, help us acquire new clients and drive revenue growth. As our business has achieved a greater scale and we are able to support a large and growing client base, we have increased our investments in marketing to take advantage of more marketing channels to profitably acquire clients. For example, we recently significantly increased our advertising spend, from $21.3 million and $46.8 million for the three and nine months ended April 29, 2017 to $25.2 million and $73.2 million for the three and nine months ended April 28, 2018, respectively, to support the growth of our business.  We expect to continue to make significant marketing investments to grow our business.  We currently utilize both digital and offline channels to attract new visitors to our website or mobile app and subsequently convert them into clients. Our current marketing efforts include client referrals, affiliate programs, partnerships, display advertising, television, print, radio, video, content, direct mail, social media, email, mobile "push" communications, search engine optimization and keyword search campaigns.

34.     Discussing the Company's revenue growth in 3Q18, the MD&A section of the Form 10-Q stated that "[r]evenue increased by $71.7 million and $189.4 million, or 29.2% and 26.3% during the three and nine months ended April 28, 2018 compared with the same periods last year," noting "[t]he increase in revenue was primarily attributable to a 29.6% increase in active clients from April 29, 2017 to April 28, 2018, which drove increased sales of merchandise."

35.     The 3Q18 Form 10-Q emphasized the importance of the television advertising campaigns to the Company's sales and promotional efforts, reporting that because its "continued growth depend[ed] on attracting new clients," "[s]tarting in calendar year 2017, [it] began to increase [its] paid marketing expenses by investing more in digital marketing and launching [its] first television advertising campaigns."  The Form 10-Q also expressly stated that the Company

then "expect[ed] to increase [its] spending on these and other paid marketing channels in the future."

36.     On June 19, 2018, *CNBC* published another article discussing the Company's 3Q18 earnings report entitled *Trader: this company could be the Netflix of apparel*. The article emphasized the Company's reported 30% year-over-year subscriber growth:

**Trader: this company could be the "Netflix of apparel"**

- Josh Brown, Ritholtz Wealth Management CEO, bought Stitch Fix.

- It "might be the answer" to apparel companies that have had trouble building their online businesses, he said on Monday's "Halftime Report"

- The company topped Q3 analyst estimates when it reported earnings on June 7 and noted that active clients grew 30% compared to a year earlier.

On Monday Ritholtz Wealth Management CEO and "Halftime Report" trader Josh Brown bought Stitch Fix since he believes it could become the "Netflix of apparel."

The San Francisco-based company is a clothing subscription service. Users fill out a style profile online and then receive a package with personally-curated clothing and accessories from the company. Subscribers can decide what they would like to buy from the box, and they can return the remaining items free of charge.

As e-commerce growth accelerates and traditional retailers struggle to keep up, Brown believes Stitch Fix could be a bright spot in the sector.

"If you look at the trouble the apparel companies have had building an online business fast enough to offset the decline in foot traffic Stitch Fix might be an answer," he said on Monday's "Halftime Report." "It may become the Netflix of apparel."

Brown also likes the fundamentals of the company. He noted that it is "growing its user base by an outstanding number" and that it's also showing accelerating revenue. "I think they found a way to build a business in apparel online that just absolutely delights their customers," he said.

Stitch Fix went public on November 17, 2017, and shares are up 81% since through Monday's close. The company most recently reported quarterly results on June 7 that topped analyst estimates for both earnings and revenue, and the number of subscribers grew 30% in Q3 compared to a year earlier. The stock has soared 33% since the company announced results.

37.     As the market continued to digest the impact of the Company's reported 3Q18 growth and the continuing momentum that it purported to represent, the price of the Company's stock increased to a Relevant Period high of $51.19 per share on September 17, 2018.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

00109407.000.docx

38.     On July 15, 2018, Lake presented for Stitch Fix on *NBC*'s Today show. A video link to the segment remained on the Company's website throughout the Relevant Period.  Lake explained how she had launched Stitch Fix with just 29 customers, with *NBC* digitally displaying the number rapidly growing to 2.7 million active clients. As a result, it was stated that Stitch Fix was then "worth about two billion dollars."  Asked whether business had been negatively impacted by the new Amazon.com Prime Wardrobe service rolled out earlier in 2018, which similarly "ship[s] customers clothes to try before they buy," Lake claimed that it had not impacted the business, emphasizing that "[t]he hardest part is that there's a million pairs of jeans out there literally and which ones are going to be the best ones for your body. And that's actually the hardest part to solve and we don't see anybody else doing that."

39.     The statements set forth above were materially false and misleading when made because they misrepresented and/or omitted material facts necessary to make the statements made not misleading.  These material facts, which were known to or deliberately disregarded by Defendants, were: (a) that the Company's active client growth had slowed to a crawl; (b) that the Company had completely shut down its television advertising campaign for 10 of the 13 weeks in 4Q18, dramatically decreasing the number of new active client additions; and (c) that as a result, the Company's current business metrics and financial prospects were not as strong as it had led the market to believe during the Relevant Period.

## THE TRUTH IS REVEALED

40.     On October 1, 2018, the Company issued a press release announcing its financial results for 4Q18, the period ended July 28, 2018.  In the press release, the Company reported 2.7 million active clients, disclosing that its new active client growth had stalled throughout 4Q18. The press release stated as follows:

**Stitch Fix Announces Fourth Quarter and Full Fiscal Year 2018 Financial Results**

. . . Stitch Fix, Inc. (NASDAQ: SFIX), the leading online personal styling service, has released its financial results for the fourth quarter and full fiscal year 2018 ended July 28, 2018 and posted a letter to its shareholders on its investor relations website.

00109407.000.docx

**Fourth quarter highlights**

- Active clients of 2.7 million, an increase of 25% year over year

- Net revenue of $318.3 million, an increase of 23% year over year

- Net income of $18.3 million and adjusted EBITDA of $11.1 million

- Diluted earnings per share of $0.18

**Full year highlights**

- Net revenue of $1.2 billion, an increase of 26% year over year

- Net income of $44.9 million and adjusted EBITDA of $53.6 million

- Diluted earnings per share of $0.34

"Q4 was another strong quarter for us," said Stitch Fix Founder and CEO, Katrina Lake. "We grew our active client count 25% year over year and delivered $318.3 million in net revenue and $11.1 million in adjusted EBITDA."

41.     During the conference call held with investors later that evening, the Company stated that despite having reported on June 7, 2018 – only three weeks before the end of 4Q18 – that it had grown active clients by 180,000 quarter-over-quarter and 29.6% year-over-year – to 2.7 million – its active client growth rate had already dramatically declined and it was only up 54,000 quarter-over quarter and 548,000, or 25%, year-over-year, and that its active client count still remained at 2.7 million.  Also during the call, which was hosted by Lake, Yee and Smith, Smith disclosed that the Company had decided to "temporarily cease[] [its] national TV campaign for 10 weeks" during the 13 weeks of 4Q18, purportedly to "measure channel efficacy."  Smith conceded that the decision had had a negative impact on new client growth during the quarter, acknowledging that the Company had "learned that TVE was a more effective acquisition channel than [they] had previously modeled as measured on a cost per acquisition basis."  During the Q&A session, when asked whether television advertising had "already turned back on," Lake replied that the Company had "turned TV back on," expressly acknowledging that "TV is an important part of that portfolio."  Later she reiterated that "we always knew that TV was an important component of [marketing], but I think having gone

00109407.000.docx

through this test and having really understood more granularly how TV impacts, I think, we feel like it's a really important part of the portfolio and you'll continue to see us invest there."

42.     As the after-hours price of the Company's common stock began plummeting, *The Wall Street Journal* published an article on Stitch Fix.  According to the article, "[w]hen Stitch Fix, a subscription fashion service, had its initial public offering last November, investors were skeptical.  How many people would continue to pay for constant wardrobe updates?"  The article noted that while "[i]n its first quarters as a public company, Stitch Fix defied the skeptics and posted consistent growth, raising hopes that it could succeed where other subscription services ha[d]e failed" and causing its stock price to increase by "73% through Monday's close," the "fiscal fourth-quarter results show[ed] that the bullish thesis may be coming apart at the seams." The article concluded that "Stitch Fix's stagnation with its core customer – American women – is a red flag.  If it misses again, investors will have good reason to believe it is going the way of Blue Apron Holdings, Birchbox, and other subscription services that soared and then lost their novelty."

43.     On October 2, 2018, William Blair discussed the sharp deceleration in the growth of active clients and the Company's lower than expected 2019 revenue and earnings guidance:

**Greater-Than-Expected Deceleration of Active Clients Overshadows Plans to Launch Internationally**

What You Need to Know

- Active clients grew about 25% year-over-year to roughly 2.7 million. Sequential net adds of roughly 54,000 was lower than the Street estimate of roughly 128,000.

- Revenue slightly missed the Street estimate by less than 1%. Gross profit and EBITDA beat the Street by 2% and 13%, respectively.

- First quarter 2019 guidance was issued below the Street for both revenue and EBITDA.

- Initial fiscal 2019 guidance bracketed the Street for revenue and was below the Street for EBITDA . . . .

- The company announced plans to launch Women's and Men's offerings in the United Kingdom by the end of fiscal 2019.

Stock Thoughts. Stitch Fix shares are down about 20% in the aftermarket, likely due to greater than-expected deceleration on active clients and revenue, as well as lower-than expected EBITDA guidance for fiscal 2019.

44.     Following the Company's October 1, 2018 disclosures, the price of Stitch Fix common stock plummeted, falling $15.69 per share –more than 35% – on unusually high volume of more than 39.9 million shares traded, or more than 9.5 times the average daily volume over the preceding ten trading day.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

45.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by the Director Defendants.

46.     Plaintiff will adequately and fairly represent the interests of Stitch Fix in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

47.     Plaintiff is a current owner of the Company stock and has continuously been an owner of Company stock during all times relevant to the Director Defendants' wrongful course of conduct alleged herein.  Plaintiff understands her obligation to hold stock throughout the duration of this action and is prepared to do so.

48.     During the illegal and wrongful course of conduct at the Company and through the present, the Board consisted of the Director Defendants (except Defendant Svane, who joined the Board in October 2018).  Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

49.     The Company Board is currently comprised of seven (7) members – Lake, Anderson, Gurley, Hansen, Lynch, McCollam, and Svane.  Thus, Plaintiff is required to show that a majority of the Director Defendants, *i.e.*, four (4), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

50.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

51.     The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

52.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

53.     Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

54.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

**The Director Defendants Are Not Independent or Disinterested**

**Defendant Lake**

55.     Defendant Lake is not disinterested or independent, and therefore, is incapable of considering demand because she (as its president and CEO) is an employee of the Company who derives substantially all her income from her employment with Stitch Fix, making her not independent.  As such, Defendant Lake cannot independently consider any demand to sue herself for breaching her fiduciary duties to Stitch Fix, because that would expose her to liability and threaten her livelihood.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

00109407.000.docx

56.     Additionally, Stitch Fix acknowledged that Lake is not independent in its Form DEF 14A filed with the SEC on November 7, 2018.

**Defendants McCollam, Hansen, and Svane**

57.     During the Relevant Period, Defendants McCollam, Hansen, and Svane served as members of the Audit Committee.  Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, reviewing Management's Discussion and Analysis, press releases, and assuring the adequacy and effectiveness of disclosure controls, ensure ethical compliance, and otherwise meet their responsibilities as set forth in the Audit Committee Charter as set forth herein.

58.     Defendants McCollam, Hansen, and Svane breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  Therefore, Defendants McCollam, Hansen, and Svane face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**Defendant Anderson**

59.     Defendant Anderson is the founder of Baseline Ventures, and a founding investor in Stitch Fix.  Collectively, Anderson and Baseline Ventures hold approximately 24,622,300 Class B shares of Stitch Fix, representing more than 42% of these shares.

60.     Based on this large stake in Stitch Fix, Anderson was motivated to put his (and Baseline Ventures) interests above those of Stitch Fix, and based thereon, any demand on him would be futile.

**Defendant Gurley**

61.     Defendant Gurley has spent over 15 years as a General Partner at Benchmark Capital Partners ("Benchmark").  Collectively, Gurley and Benchmark hold approximately 16,422,200 Class B shares of Stitch Fix, representing approximately 28.5% of these shares.

62.     Based on this large stake in Stitch Fix, Gurley was motivated to put his (and Benchmark) interests above those of Stitch Fix, and based thereon, any demand on him would be futile

## COUNT I

### Against the Director Defendants for Breach of Fiduciary Duty

63.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64.     The Director Defendants owe the Company fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

65.     The Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

66.     The Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Director Defendants breached their fiduciary duties of loyalty and good faith by allowing the Company to improperly misrepresent the Company's publicly reported business performance, as alleged herein.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

67.     As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

68.     As a direct and proximate result of the Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, and reputational harm.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

00109407.000.docx

## COUNT II

### Against the Director Defendants for Gross Mismanagement

69.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70.     By their actions alleged herein, the Director Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

71.     As a direct and proximate result of the Director Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages in excess of hundreds of millions of dollars.

72.     Because of the misconduct and breaches of duty alleged herein, the Director Defendants are liable to the Company.

## COUNT III

### Against the Director Defendants for Waste of Corporate Assets

73.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

75.     As a result of the misconduct described above, the Director Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

76.     As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

77.     Plaintiff, on behalf of Stitch Fix, has no adequate remedy at law.

00109407.000.docx

## COUNT IV

### Against the Director Defendants for Violations of Section 10(b)
### of the Exchange Act and SEC Rule 10b-5

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     During the Relevant Period, the Director Defendants disseminated or approved public statements that failed to disclose (a) that Stitch Fix's active client growth had slowed to a crawl; (b) that Stitch Fix had completely shut down its television advertising campaign for 10 of the 13 weeks in 4Q18, dramatically decreasing the number of new active client additions; and (c) that as a result, the Company's current business metrics and financial prospects were not as strong as it had led the market to believe during the Relevant Period.  Thus, the price of the Company's shares was artificially inflated due to the deception of the Director Defendants.

80.     As such, the Director Defendants caused the Company to violate section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud; and

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

81.     As a result of the Director Defendants' misconduct, the Company is suffering litigation expense and reputational harm in the marketplace in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5.

## COUNT V

### Against The Director Defendants
### for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9

82.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.     SEC Rule 14a-9, promulgated pursuant to section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light

00109407.000.docx

of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.  Specifically, the Company's Proxy violated section 14(a) of the Exchange Act and SEC Rule 14a-9 because it included materially false and misleading information and failed to disclose (a) that Stitch Fix's active client growth had slowed to a crawl; (b) that Stitch Fix had completely shut down its television advertising campaign for 10 of the 13 weeks in 4Q18, dramatically decreasing the number of new active client additions; and (c) that as a result, the Company's current business metrics and financial prospects were not as strong as it had led the market to believe during the Relevant Period.

84.     In the exercise of reasonable care, the Director Defendants should have known that the statements contained in the Proxy were materially false and misleading.

85.     The misrepresentations and omissions in the Proxy were material to Company stockholders in voting on the matters set forth for stockholder ratification in the Proxy.  The Proxy was an essential link in the accomplishment of the continuation of these defendants' continued violation of their fiduciary duties.

86.     The Company was damaged as a result of these defendants' material misrepresentations and omissions in the Proxy.

## **PRAYER FOR RELIEF**

(A)     Declaring that Plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative of the Company;

(B)     Finding Defendants liable for breaching their fiduciary duties owed to the Company;

(C)     Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

(D)     Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

00109407.000.docx

(E)     Awarding such other and further relief as is just and equitable.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: December 12, 2018          **GREEN & NOBLIN, P.C.**


By:     /s/ Robert S. Green
          Robert S. Green

James Robert Noblin
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

00109407.000.docx

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I, SABRINA ROYER, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Stitch Fix, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Stitch Fix, Inc. common stock at all relevant times.

_____
SABRINA ROYER

1